IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 ) |
| Phoenix Payment Systems, Inc. | ) Case No. 14-11848 (MFW) ) |
| Debtor. | ) **Hearing Date: Sept. 3, 2014 @ 11:30 a.m. (EDT)** ) **Objection Deadline: Aug. 22, 2014 @ 4:00 p.m. (EDT)** ) |

### DEBTOR'S APPLICATION TO EMPLOY AND TO RETAIN RAYMOND JAMES & ASSOCIATES, INC., AS INVESTMENT BANKER

The above-captioned debtor and debtor-in-possession (the "**Debtor**") hereby submits this application (the "**Application**") for an order, pursuant to Bankruptcy Code §§ 327(a) and 328, Bankruptcy Rule 2014, and Local Rule 2014-1, authorizing them to employ and retain Raymond James & Associates, Inc. ("**Raymond James**"), as its external investment banking advisor *nunc pro tunc* to the Petition Date (defined below). In support of this Application, the Debtor relies upon the *Declaration of Michael Pokrassa in Support of Debtor's Application to Employ and to Retain Raymond James & Associates, Inc., as Investment Banker* (the "**Pokrassa Declaration**"), a copy of which is attached hereto as **Exhibit A** and in further support hereof, the Debtor respectfully represents as follows:

### JURISDICTION

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 327(a) and 328, Bankruptcy Rule 2014, and Local Rule 2014-1.

## INTRODUCTION

1. On August 4, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court. Additional information regarding the Debtor's business and the background relating to events leading up to the above-captioned chapter 11 case (the "**Chapter 11 Case**") can be found in the *Declaration of Michael E. Jacoby in Support of Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**") [Docket No. 3], filed with the Court on the Petition Date and fully incorporated herein by reference.

2. The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Case and no committees have yet been appointed

## RETENTION OF RAYMOND JAMES

3. Raymond James was engaged by the Debtor on February 25, 2014, pursuant to the terms of an engagement letter (the "**Engagement Letter**"),[1] to provide investment banking services in connection with a Transaction. Prior to the Petition Date, the Debtor determined that a sale of substantially all of its assets was in the best interests of its creditors, and accordingly, initiated a sale process through Raymond James that culminated in the execution of the Stalking Horse Agreement (as defined in the First Day Declaration).

4. The Debtor is familiar with the professional standing and reputation of Raymond James. The Debtor understands that Raymond James has a dedicated restructuring investment banking group with extensive experience advising corporations, creditors' committees, and other

---

[1] A copy of the Engagement Letter is attached as Schedule A to the Pokrassa Declaration and is incorporated herein by reference. The description of the Engagement Letter set forth herein is qualified in its entirety by reference to the actual terms of the Engagement Letter; to the extent of any discrepancy between such description and the Engagement Letter, the terms of the Engagement Letter shall govern. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

constituents in complex situations involving underperforming or unsuitably-capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings.

5.  The Debtor understands that, since 2002, Raymond James has advised on, or been involved with, over 150 restructuring-related or distressed transactions, both out-of-court and in Chapter 11 cases, including, without limitation, sale, restructuring, financing, financial opinion, and special advisory transactions. Moreover, Raymond James has extensive experience in providing investment banking services in the technology services sector, having completed 91 transactions, including 28 public offerings and 63 advisory services and private placement transactions, since 2010.

6.  Thus, the Debtor submits that Raymond James is well qualified to advise it on investment banking matters and requests authority to employ and to retain Raymond James, *nunc pro tunc* to the Petition Date, to serve as its investment bankers for this case.

## **SERVICES TO BE RENDERED**

7.  In accordance with the Engagement Letter, Raymond James would provide investment banking services including, without limitation, the following:

    (a)  reviewing and analyzing the Debtor's business, operations, properties, financial condition, and prospects;

    (b)  evaluating the Debtor's debt capacity, advising the Debtor generally as to available financing and assisting in the determination of an appropriate capital structure;

    (c)  assisting the Debtor in evaluating potential Transaction alternatives and strategies;

    (d)  assisting the Debtor in preparing documentation within its area of expertise that is required in connection with a Transaction;

    (e)  assisting the Debtor in identifying Interested Parties that may be interested in participating in a Transaction;

(f) assisting (or after consultation with certain parties) conducting negotiations regarding the Transaction and its structure;

(g) advising the Debtor as to potential mergers or acquisitions and the sale or other disposition of any of the Debtor's assets or businesses;

(h) advising the Debtor on tactics and strategies for negotiating with Stakeholders;

(i) advising the Debtor on the timing, nature, and terms of any new securities, other considerations, or other inducements to be offered to its Stakeholders in connection with any Restructuring Transaction; and

(j) participating in the Debtor's board of director meetings as determined by the Debtor to be appropriate, and, upon request, providing periodic status reports and advise to the board with respect to matters falling within the scope of Raymond James' retention.

8. The Debtor has been advised by Raymond James that it will endeavor to coordinate with the other retained professionals in this case to eliminate unnecessary duplication or overlap of work.

## PROPOSED COMPENSATION

9. Raymond James and the Debtor have agreed to a fee structure that anticipates a substantial commitment of professional time and effort and one in which (a) Raymond James' sizable commitment to this matter may foreclose other opportunities that would otherwise be available to it and (b) the actual time and commitment required of Raymond James may vary considerably throughout this case.

10. Accordingly, in consideration of the foregoing and Raymond James' agreement to provide the above-described services to the Debtor, the Debtor proposes to compensate Raymond James as follows:

a) <u>Monthly Advisory Fee</u> – The Debtor would pay Raymond James a non-refundable fee of $50,000 upon each monthly anniversary of the date of the Engagement Letter.

b) <u>Reimbursement</u> – The Debtor would reimburse Raymond James, within 30 days of receipt of an invoice thereof, for reasonable out-of-pocket expenses (including legal fees).

c) <u>Financing Transaction Fee</u> – At the closing of a Financing Transaction, Raymond James would be paid a cash fee, in the amount of the lesser of (x) $500,000 or (y) the sum of (i) 3.0% of the Aggregate Gross Proceeds of all senior secured notes and bank debt raised and (ii) 6.0% of the Aggregate Gross Proceeds of all second lien or junior secured debt financing raised, unsecured, non-senior and subordinate debt raised and all equity or equity-linked securities raised which fees shall be paid immediately out of the proceeds of such placement.

d) <u>Restructuring Transaction Fee</u> – The Debtor would pay Raymond James a cash fee in conjunction with a Restructuring Transaction in an amount equal to $700,000.

e) <u>Business Combination Transaction Fee</u> – At the closing of any Business Combination Transaction, the Debtor would pay a cash fee out of proceeds as a cost of sale at the closing of a Business Combination Transaction, equal to the sum of (i) $500,000 and (ii) 5% of Consideration paid, payable or received, in an amount between $8 million and $15 million, plus 7.5% of Consideration paid, payable or received, an amount between $15 million and $20 million, plus 10% of Consideration paid, payable or received, in an amount greater than $20 million.

11. Pursuant to the Engagement Letter, Raymond James is not required to seek interim or final approval of compensation for its work in this case, nor is it required to keep contemporaneous time entries; provided, however, this shall not prejudice the rights of the United States Trustee to challenge the reasonableness of Raymond James' compensation under Bankruptcy Code Sections 330 and 331 and Raymond James shall submit a final fee application in that regard.

12. The Debtor understands that the fee structure outlined in the Engagement Letter and summarized above is consistent with the typical arrangement Raymond James and other firms enter into when rendering similar services under similar circumstances, and accordingly, it believes it is justified and appropriate under the circumstances of this case.

**INDEMNIFICATION**

13. The Debtor proposes to indemnify Raymond James and each of its directors, officers, agents, employees, and controlling persons in accordance with the indemnification provisions set forth in the Engagement Letter (as they may be modified by the order approving this Application).

14. Likewise, similar indemnification arrangements have been approved and implemented in other chapter 11 cases by courts in this District. See, e.g., In re A123 Systems, Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. 2012); In re Graceway Pharmaceuticals, LLC, Case No. 11-13036 (MFW) (Bankr. D. Del. 2011); In re NEC Holdings Corp., Case No. 10-11890 (PJW) (Bankr. D. Del. 2010); In re Regent Communications, Inc., Case No. 10-10623 (KG) (Bankr. D. Del. 2010); In re Eddie Bauer Holdings, Inc., No. 09-12099 (MFW) (Bankr. D. Del. 2009); In re Tropicana Entmt, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. 2008); In re Leiner Health Prods., Inc., Case No. 08-10446 (KJC) (Bankr. D. Del. 2008); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. 2007); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. 2006); In re Foamex Intl, Inc., Case No. 05-12685 (NW) (Bankr. D. Del. 2005); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. 2003); In re United Artists Theatre Co., Case No. 00-3514 (SLR) (Bankr. D. Del. 2000).

**DISINTERESTEDNESS**

15. To the best of the Debtor's knowledge, information, and belief, Raymond James has no connection with, and holds no interest adverse to, the Debtor, its creditors, or any other party-in-interest, or their respective attorneys or other professionals, or the United States Trustee or any person employed in the Office of the United States Trustee, except as disclosed in the Pokrassa Declaration.

RLF1 10576474v.3

16.   Moreover, to the best of the Debtor's knowledge, Raymond James is a "disinterested person", as referenced in Bankruptcy Code § 327(a) and as defined in Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b).

### STATUTORY BASIS FOR REQUESTED RELIEF

17.   Bankruptcy Code § 327(a) provides that a debtor, subject to court approval:

> May employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

18.   Bankruptcy Code § 328, in turn, provides that a debtor may "employ or authorize the employment of a professional person under [Bankruptcy Code section § 327] … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  In general, when a fee arrangement, such as that proposed herein, is approved under Section 328, it cannot be revisited later for reasonableness or otherwise, unless the terms and conditions of such arrangement "prove to have been improvident in light of developments not capable of being anticipated at the time of" approval thereof.  See Bankruptcy Code § 328(a). However, this shall not prejudice the rights of the United States Trustee to challenge the reasonableness of Raymond James' compensation under Bankruptcy Code Sections 330 and 331 and Raymond James shall submit a final fee application in that regard.

19. The Debtor submits that the retention of Raymond James under Bankruptcy Code § 327, and the approval of the proposed compensation to be paid, as detailed above, are each appropriate and justified under the circumstances and that the proposed fees to be paid are fair and reasonable and all other applicable statutory and other requirements, including Bankruptcy Rule 2014 and Local Rule 2014-1, are satisfied.

20. Accordingly, for the reasons set forth above, the Debtor submits that the relief requested herein is in its best interests and the best interests of its estate and creditors and, therefore, should be approved

## **NOTICE**

21. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors, as filed with the Debtor's Chapter 11 petition; (c) counsel to The Bancorp Bank, the Debtor's post-petition lender; (d) counsel to the proposed stalking horse purchaser, a wholly-owned subsidiary of North American Bancard; (e) counsel to Raymond Moyer, the Debtor's majority stockholder; and (f) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtor will serve copies of the Motion and any order entered in respect of the Motion as required by Rule 9013-1(m) of the Local Rules. The Debtor submits that, under the circumstances, no other or further notice is required.

## **NO PRIOR APPLICATION**

22. No previous request for the relief sought in this Application has been made to this Court or to any other court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated:  August 8, 2014              Phoenix Payment Systems, Inc.
                                    Debtor and Debtor in Possession


By: /s/ Michael Jacoby
  _____
      Michael E. Jacoby
      *Chief Restructuring Officer*