**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Phoenix Payment Systems, Inc. | ) | Case No. 14-11848 (MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**JOINT PLAN OF REORGANIZATION OF PHOENIX PAYMENT SYSTEMS, INC.
PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
Russell C. Silberglied
Zachary I. Shapiro
Marisa A. Terranova
920 N. King Street
Wilmington, DE 19801-3301
(302) 651-7700

Counsel for Debtor and Debtor in Possession

LOWENSTEIN SANDLER LLP
Kenneth A. Rosen
Sharon L. Levine
Wojciech F. Jung
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500

-and -

WHITE AND WILLIAMS LLP
Marc S. Casarino
824 North Market Street, Suite 902
Wilmington, DE 19899 -0709
(302) 654-0424

Counsel for the Official Committee of Unsecured Creditors

Dated:  January 30, 2015

## TABLE OF CONTENTS

ARTICLE I RULES OF CONSTRUCTION AND DEFINITIONS ..........................................................1

1.1    Rules of Construction ..........................................................1
1.2    Definitions..........................................................2

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS..........................................................12

2.1    Introduction..........................................................12
2.2    Unclassified Claims ..........................................................13
2.3    Unimpaired Classes of Claims..........................................................13
2.4    Impaired Voting Classes of Claims and Interests ..........................................................13

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ..........................................................13

3.1    Unclassified Claims ..........................................................13
3.2    Unimpaired Classes of Claims..........................................................14
3.3    Impaired Voting Classes of Claims and Interests ..........................................................15
3.4    Reservation of Rights Regarding Claims and Interests ..........................................................17

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ..........................................................17

4.1    Impaired Classes Entitled to Vote..........................................................17
4.2    Acceptance by an Impaired Class ..........................................................17
4.3    Presumed Acceptances by Unimpaired Classes ..........................................................17

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ..........................................................17

5.1    Continued Corporate Existence ..........................................................17
5.2    Certificate of Incorporation and By-laws ..........................................................17
5.3    Cancellation of Interests ..........................................................18
5.4    Authorization and Issuance of the New Common Stock ..........................................................18
5.5    Directors and Officers of Reorganized Debtor ..........................................................18
5.6    Corporate Action; Effectuating Documents ..........................................................18
5.7    Revesting of Reorganized Debtor Assets ..........................................................19
5.8    Appointment of the Liquidating Trustee..........................................................19
5.9    The PPSI Liquidating Trust ..........................................................19
5.10    Insurance ..........................................................20
5.11    Preservation of Rights of Action; Resulting Claim Treatment..........................................................20
5.12    Exemption From Certain Transfer Taxes ..........................................................21
5.13    Plan Supplement ..........................................................21
5.14    Committee..........................................................21
5.15    Post-Confirmation Committee ..........................................................22

ARTICLE VI TREATMENT OF CONTRACTS AND LEASES ..........................................................22

6.1    Rejection of Contracts and Leases ..........................................................22
6.2    Claims Based of Rejection of Executory Contracts of Unexpired Leases..........................................................22

6.3     Assumption of Contracts and Leases.................................................................23
6.4     Payments Related to the Assumption of Executory Contracts and Unexpired Leases.................23
6.5     Certain Indemnification Obligations...............................................................23
6.6     Extension of Time to Assume or Reject .............................................................24

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS..............................................24

7.1     Determination of Allowability of Claims and Interests and Rights to Distributions...................24
7.2     Procedures for Making Distributions to Holders of Allowed Claims and Allowed Interests .......24
7.3     Application of Distribution Record Date ...........................................................25
7.4     Provisions Related to Disputed Claims ............................................................25
7.5     Adjustment of Claims Without Objection ..........................................................26
7.6     Surrender of Cancelled Old Securities..............................................................26
7.7     Withholding and Reporting Requirements .........................................................27
7.8     Setoffs ...........................................................................................................27
7.9     Prepayment ...................................................................................................27
7.10    No Distribution in Excess of Allowed Amount of Claim...........................................27
7.11    Allocation of Distributions ..............................................................................27

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
        THE PLAN ..................................................................................................28

8.1     Conditions to Confirmation .............................................................................28
8.2     Conditions to Effective Date............................................................................28
8.3     Waiver of Conditions .....................................................................................28
8.4     Operations of the Debtor Between the Confirmation Date and the Effective Date.....................28
8.5     Effective Date ...............................................................................................29

ARTICLE IX RETENTION OF JURISDICTION.................................................................29

9.1     Scope of Retention of Jurisdiction ....................................................................29
9.2     Failure of the Bankruptcy Court to Exercise Jurisdiction...........................................30

ARTICLE X MISCELLANEOUS PROVISIONS................................................................30

10.1    Administrative Expense Claims, Professional Fee Claims and Substantial Contribution Claims 30
10.2    Payment of Statutory Fees ...............................................................................31
10.3    Successors and Assigns and Binding Effect .......................................................31
10.4    Preservation of Subordination Rights ................................................................31
10.5    Releases........................................................................................................31
10.6    Discharge of the Debtor ..................................................................................32
10.7    Exculpation and Limitation of Liability .............................................................33
10.8    Injunction ....................................................................................................34
10.9    Term of Injunctions or Stays...........................................................................34
10.10   Survival of the Final DIP Order........................................................................34
10.11   Survival of the Sale Order and Sale-Related Documents ........................................34
10.12   Modifications and Amendments ......................................................................35
10.13   Substantial Consummation ..............................................................................35
10.14   Severability of Plan Provisions.........................................................................35
10.15   Revocation, Withdrawal, or Non-Consummation ................................................35
10.16   Notices ........................................................................................................36
10.17   Conflicts .....................................................................................................36

# PLAN OF REORGANIZATION OF PHOENIX PAYMENT SYSTEMS, INC.

## INTRODUCTION

Phoenix Payment Systems, Inc. (the "**Debtor**") and the Committee (as defined herein) hereby propose this plan of reorganization (the "**Plan**") pursuant to Section 1121(a) of the Bankruptcy Code.  Reference is made to the disclosure statement distributed contemporaneously herewith (the "**Disclosure Statement**") for a discussion of the Debtor's history, business, property, results of operations, projections for future operations and risk factors, and a summary and analysis of the Plan and certain related matters.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejection of this Plan.  All parties entitled to vote to accept or reject the Plan are encouraged to read the Disclosure Statement and Plan in their entirety before voting.

## ARTICLE I

## RULES OF CONSTRUCTION AND DEFINITIONS

### 1.1    Rules of Construction

(a)    For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Section 1.2 of the Plan.  Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(b)    Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

(c)    Any reference in the Plan to (i) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, or as otherwise specified in this Plan, and (ii) an existing document, exhibit, or other agreement means such document, exhibit, or other agreement as it may be amended, modified, or supplemented from time to time, as the case may be, and as in effect at any relevant point.

(d)    Unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan.

(e)    The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

(f)    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

(g)    The rules of construction set forth in Bankruptcy Code Section 102 and in the Bankruptcy Rules shall apply.

(h)    References to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein shall, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection.

(i)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 1.2    Definitions

(a)    "**9019 Motion**" means the *Debtor's Motion to Approve Settlement Agreement with Frascella Capital, LLC, JEMS Venture Capital, LLC and DWF Investments LLC* [Docket No. 540], filed on January 30, 2015.

(b)    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code Sections 503(b) and entitled to priority pursuant to Bankruptcy Code Section 507(a)(2), including (i) the actual, necessary costs and expenses of preserving the Estate and operating the business of the Debtor after the commencement of the Chapter 11 Case, (ii) Professional Fee Claims, (iii) all fees and charges assessed against the Estate under Section 1930 of Title 28 of the United States Code, (iv) Cure payments for contracts and leases that are assumed under Bankruptcy Code Section 365 that have not been previously paid before the Effective Date, and (v) Claims pursuant to Section 503(b)(9) of the Bankruptcy Code.

(c)    "**Allowed**" means when used with respect to (A) a Claim, all or any portion of a Claim that either (i) is not Disputed,  (ii) has been allowed by a Final Order, or (iii) is allowed pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; or (B) an Interest, an Interest held in the name, kind and amount set forth in the records of the Debtor that is either (i) not Disputed or (ii) has been allowed by a Final Order, *provided*, *however*, that all Allowed Claims and Allowed Interests shall remain subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510, as applicable.   Except as specifically provided for in the Plan, the Confirmation Order or a Final Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, and therefore, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other penalties.

(d)    "**Asset Purchase Agreement**" means the Asset Purchase Agreement, dated as of July 31, 2014, made by and between the Debtor and the Purchaser.

(e)    "**Assumed Contract**" means any contract or agreement other than an Indemnification Obligation assumed by the Debtor pursuant to Section 6.3 of the Plan, including, without limitation, those contracts and agreements listed in the Plan Supplement.

(f)    "**Bancorp**" means The Bancorp Bank, together with its parents, subsidiaries, affiliates, officers, directors, members, employees, agents, representatives, attorneys, and professionals.

(g)    "**Bancorp AMEX Reserve**" means the reserve held by Bancorp on account of the Debtor's letter of credit for the benefit of American Express.

(h)    "**Bancorp Claim**" means the Claim existing under the Bancorp Credit Agreements.

(i)    "**Bancorp Credit Agreements**" means the Prepetition Credit Documents and the Processing Agreements, as each term is defined in the Final DIP Order.

(j)    "**Bancorp DIP Reserve**" means the reserve fund, initially in the amount of $2.5 million, established from the proceeds of the Sale and held by Bancorp for possible distribution to Bancorp pursuant to Section 10.3 of the DIP Credit Agreement if any such obligation is Allowed.  The Bancorp DIP Reserve shall be closed and extinguished on the later of (i) when Bancorp withdraws amounts in satisfaction of Claims arising under Section 10.3 of the DIP Credit Agreement or (ii) twenty-four months after the close of the Sale (October 2016).

(k)    "**Bancorp HELOC Reserve**" means the reserve fund held by Bancorp on account of the Debtor's guaranty of Moyer's home equity line of credit.

(l)        "**Bancorp Interchange Reserve**" means the reserve fund held by Bancorp on account of the Debtor's obligations under that certain Interchange Agreement, made by and between the Debtor and Bancorp.

(m)        "**Bancorp Reserves**" means collectively, the Bancorp DIP Reserve, the Bancorp HELOC Reserve, the Bancorp AMEX Reserve and the Bancorp Interchange Reserve.  Upon closure of the Bancorp Reserves, all Cash or other property held in the Bancorp Reserves that have not been paid to Bancorp or otherwise disbursed pursuant to the terms of the underlying agreements with respect to any such Reserves shall become the property of the PPSI Liquidating Trust and used to pay the fees and expenses of the PPSI Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and thereafter distributed to holders of Allowed Claims and Interests.

(n)        "**Bankruptcy Code**" means Sections 101 *et seq.*, of title 11 of the United States Code, as now in effect or hereafter amended and applicable to the Chapter 11 Case.

(o)        "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

(p)        "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended and applicable to the Chapter 11 Case.

(q)        "**Beneficiaries**" means holders of Allowed Claims and Interests entitled to receive distributions from the Liquidating Trust Assets under the Plan.

(r)        "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

(s)        "**Cash**" means legal tender of the United States or equivalents thereof.

(t)        "**Chapter 11 Case**" means the voluntary case commenced on August 4, 2014 under Chapter 11 of the Bankruptcy Code by the Debtor in the Bankruptcy Court.

(u)        "**Claim**" means a claim as such term is defined in Bankruptcy Code Section 101(5) against the Debtor, whether arising before or after the Petition Date and specifically including an Administrative Claim.

(v)        "**Claims Agent**" means Rust Consulting/Omni Bankruptcy.

(w)        "**Claim Objection Deadline**" means the last day for filing objections to Claims in the Bankruptcy Court, which shall be the latest of (i) sixty (60) days after the Effective Date, (ii) sixty (60) days after the applicable Proof of Claim or Request for Payment is filed (except as otherwise provided in Section 10.1 of the Plan), and (iii) such other later date as is established by order of the Bankruptcy Court upon motion of the Liquidating Trustee.  The Liquidating Trustee, in consultation with the Post-Confirmation Committee, may, in its discretion, move to extend the Claim Objection Deadline at any time prior to the expiration of the Claim Objection Deadline.

(x)        "**Claims Register**" means the official claims registers in the Debtor's Chapter 11 Case maintained by the Claims Agent on behalf of the Clerk of the Bankruptcy Court.

(y)        "**Class**" means a category of holders of Claims or Interests, as described in Article II of the Plan.

(z)        "**Committee**" means the official committee of unsecured creditors formed by the U.S. Trustee on August 19, 2014 to serve in the Chapter 11 Case.

(aa)        "**Common Stockholders**" means the holders of the Phoenix Common Stock.

(bb)        "**Common Stock Interest**" means (i) any Interests in the Debtor that are based upon or arise from Phoenix Common Stock and (ii) any Claims against the Debtor that are based upon or arise from Phoenix Common Stock and are subordinated pursuant to Bankruptcy Code Section 510(b); *provided, however,* that a Claim arising from Indemnification Obligations that are assumed under Section 6.5 of the Plan shall not be considered a Common Stock Interest.

(cc)        "**Confirmation**" means confirmation of the Plan by the Bankruptcy Court pursuant to Bankruptcy Code Section 1129.

(dd)        "**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

(ee)        "**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Bankruptcy Code Section 1128.

(ff)        "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

(gg)        "**Cure**" means, in connection with the assumption of an executory contract or unexpired lease, pursuant to and only to the extent required by Bankruptcy Code Section 365(b), (i) the distribution within a reasonable period of time following Effective Date of Cash or such other property (A) as required under the terms of the applicable executory contract or lease, (B) other than as required under the terms of the applicable executory contract or lease, as may be agreed upon by the counterparties and the Debtor, or (C) as may be ordered by the Bankruptcy Court or determined in such manner as the Bankruptcy Court may specify; and/or (ii) the taking of such other actions (A) as required under the terms of the applicable executory contract or lease, (B) other than as required under the terms of the applicable executory contract or lease, as may be agreed upon by the counterparties and the Debtor, or (C) as may be ordered by the Bankruptcy Court or determined in such manner as the Bankruptcy Court may specify.

(hh)        "**Debtor**" means Phoenix Payment Systems, Inc., including in its capacity as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

(ii)        "**DIP Claim**" means any Claim existing under the DIP Facility, other than the DIP Indemnified Liabilities Claim and the DIP Enforcement Indemnity Claim.

(jj)        "**DIP Credit Agreement**" means that certain Senior Secured Debtor-in-Possession Credit and Security Agreement, dated as of July 31, 2014, made by and between the Debtor and Bancorp.

(kk)        "**DIP Enforcement Indemnity Claim**" means the Claims arising pursuant to the enforcement indemnification set forth in Section 10.3(k)(ii) of the DIP Credit Agreement.

(ll)        "**DIP Facility**" means the postpetition debtor in possession credit facility provided to the Debtor by Bancorp pursuant to the DIP Credit Agreement.

(mm)        "**DIP Facility Claim**" means the DIP Claim, the DIP Enforcement Indemnity Claim and the DIP Indemnified Liabilities Claim.

(nn)        "**DIP Facility Lender**" means Bancorp.

(oo)        "**DIP Indemnified Liabilities Claim**" means the indemnification Claims set forth in Section 10.3(a)-(k)(i) and (l) of the DIP Credit Agreement.

(pp)        "**Disbursing Agent**" means the Liquidating Trustee and/or any other Person(s) designated by (i) the Debtor on or before the Effective Date or (ii) the Liquidating Trustee in its sole discretion after the Effective Date to serve as a disbursing agent under the Plan, subject to the provisions of Section 7.2 of the Plan.

(qq)        "**Disclosure Statement**" means the written disclosure statement that relates to the Plan, as amended, supplemented, or otherwise modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code Section 1125 and Bankruptcy Rule 3018.

(rr)        "**Disputed**" means any (A) Claim or portion thereof which (i) was scheduled as "disputed" in the Schedules or (ii) is subject to an objection filed prior to the Claim Objection Deadline which has not yet been resolved by settlement or Final Order; or (B) Interest  that (i) was listed as "disputed" on the Rule 1007 List or (ii) was set forth in a filed Proof of Interest in name, kind and amount different than as set forth in the records of the Debtor, as reflected in the Rule 1007 List.

(ss)        "**Disputed Claims Reserve**" means the reserve fund created pursuant to Section 7.1 of the Plan.

(tt)        "**Distribution Date**" means, subject to the provisions of Section 7.1 of the Plan, the later of (a) the Effective Date, (b) the date such Claim or Interest becomes an Allowed Claim or Allowed Interest, or (c) as soon as practicable following a determination by the Disbursing Agent, in the Disbursing Agent's discretion in consultation with the Post-Confirmation Committee, that that there is sufficient Cash to make a distribution to the holder of such Claim or Interest pursuant to the terms of this Plan; *provided*, *however*, that in each case a later date may be established by order of the Bankruptcy Court upon motion of the Debtor, the Liquidating Trustee, or any other party; and that there may be one or more Distributions Dates for Allowed Claims or Allowed Interests.

(uu)        "**Distribution Record Date**" means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the Business Day immediately preceding the Effective Date, at 5:00 p.m. prevailing Eastern time on such Business Day.

(vv)        "**DWF**" means DWF Investments, LLC.

(ww)        "**Effective Date**" means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 8.2 of the Plan have been satisfied or waived as provided in Section 8.3 of the Plan, and is the date on which the Plan becomes effective.

(xx)        "**Estate**" means the estate of the Debtor in the Chapter 11 Case, created pursuant to Bankruptcy Code Section 541.

(yy)        "**Filed Claim**" means a Claim evidenced by a Proof of Claim or Request for Payment, as applicable.

(zz)        "**Final DIP Order**" means the *Final Order (I) Authorizing the Debtor (A) To Obtain Postpetition Financing on a Senior Secured [Basis] and Granting Priming Liens and (B) To Utilize Cash Collateral; (II) Granting Adequate Protection to the DIP Lender; and (III) Granting Related Relief* [Docket No. 149], entered by the Bankruptcy Court on September 3, 2014.

(aaa)        "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing or leave to appeal has expired and as to which no appeal, petition for certiorari or petition for

review or rehearing was filed or, if filed, remains pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing by all Persons possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

(bbb)    "**Frascella**" means Frascella Capital, LLC.

(ccc)    "**Frascella Claim**" means any Claim or Interest of any kind held by any one or more of the Frascella Entities.

(ddd)    "**Frascella Entities**" means DWF, Frascella, Larry Frascella, David Frascella and any Person related to or affiliated with any of the foregoing.

(eee)    "**General Bar Date Order**" means the *Order Establishing the Deadline for Filing Proofs of Claim and Proofs of Interest and Approving the Form and Manner of Notice Thereof* [Docket No. 250], entered by the Bankruptcy Court on September 23, 2014.

(fff)    "**General Bar Date**" means October 24, 2014 at 11:59 p.m. (prevailing Eastern Time), as established in the General Bar Date Order.

(ggg)    "**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Claim, a Transaction Retention Plan Claim, a Frascella Claim, a Schubiger Claim or any Claim that constitutes a Preferred Stock Interest or a Common Stock Interest. This definition specifically includes, without limitation, Rejection Damages Claims, if any.

(hhh)    "**Governmental Bar Date**" means February 2, 2015 at 11:59 p.m. (prevailing Eastern Time), as established in the General Bar Date Order for each and every governmental unit (as such term is defined in 11 U.S.C. § 101(27)).

(iii)    "**Impaired**" means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Bankruptcy Code Section 1124.

(jjj)    "**Indemnification Obligation**" means any obligation of the Debtor to indemnify, reimburse, or provide contribution pursuant to by-laws, articles or certificates of incorporation, contracts, or otherwise, to the fullest extent permitted by applicable law.

(kkk)    "**Interest**" means the legal, equitable, contractual, or other rights of any Person (i) with respect to Phoenix Common Stock or Phoenix Preferred Stock, or (ii) to acquire or receive any of such Interests.

(lll)    "**JEMS**" means JEMS Venture Capital, LLC.

(mmm)    "**Lien**" means a lien as such term is defined in Bankruptcy Code Section 101(37).

(nnn)    "**Liquidating Trust Agreement**" means that certain agreement made by an among the Debtor, as depositor, the Liquidating Trustee, and Delaware Trust Company, as the Delaware Statutory Trustee, establishing and delineating the terms and conditions of the PPSI Liquidating Trust, substantially in the form to be filed as part of the Plan Supplement.

(ooo)    "**Liquidating Trust Assets**" means all assets of the Debtor or the Estate, other than the Reorganized Debtor Assets, as of the Effective Date. The Liquidating Trust Assets include (a) all Cash on hand, (b) all proceeds of the Sale, (c) any claim, right or interest of the Debtor in any deposit, prepayment,

6

refund, rebate, abatement or other recovery for Taxes, (d) the Litigation Rights, (e) the Debtor's interests in and rights to the assets in the Bancorp Reserves and the NAB Escrow, (f) the reversionary interests in the Purchaser Reserve as set forth in Section 1.2(ggggg), (g) all proceeds of any of the foregoing and all proceeds of any of the foregoing received by any person or entity on or after the Effective Date, (h) all of the Debtor's books and records to the extent the same are not purchased assets under the Asset Purchase Agreement and (i) the attorney-client privilege related or incidental to the assets identified in the foregoing (a) - (h) above as well as those items designated as Liquidating Trust Assets in the immediately following sentence.  In addition, the Liquidating Trust Assets include all rights under and payments or causes of action, if any, owing to the Debtor from (i) the Asset Purchase Agreement, (ii) the Sale Order, and (iii) any other order of the Bankruptcy Court, as well as payments or causes of action, if any, owing to the Debtor under the Processor Agreement and the MSA that relate to periods prior to the Effective Date.  For the avoidance of doubt, the Liquidating Trust Assets do not include (i) the MSA, (ii) the Processor Agreement, and (iii) payments under the Processor Agreement relating to periods after the Effective Date.

(ppp)      "**Liquidating Trust Expenses**" means the fees and expenses of the Liquidating Trustee and the Post-Confirmation Committee, without limitation,  professional fees and expenses.

(qqq)      "**Liquidating Trustee**" means the entity appointed in accordance with the Liquidating Trust Agreement and Section 5.8 of the Plan to administer the PPSI Liquidating Trust.

(rrr)      "**Litigation Rights**" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, which are to be retained by the PPSI Liquidating Trust pursuant to Section 5.11 of the Plan, including, without limitation, claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code and its state law equivalents.  For the avoidance of doubt, Litigation Rights do not include any cause of action acquired by the Purchaser pursuant to the Asset Purchase Agreement.

(sss)      "**Moyer**" means Raymond Moyer.

(ttt)      "**Moyer Setoff Amounts**" means amounts owed by Moyer to the Debtor by virtue of (a) the Debtor's payment of the mortgage on Moyer's residence under the Debtor's guarantee to Bancorp; (b) amounts the Debtor loaned or advanced to Moyer or payments made by the Debtor on Moyer's behalf; (c) payments made by the Debtor on account of claims which a court or an arbitration panel has found joint and several liability between Moyer and the Debtor; and (d) any other amount which the Debtor has a legal right to set off against Claims or Interests of Moyer.

(uuu)      "**MSA**" means that certain Management Services Agreement, dated as of October 23, 2014, made by and between the Debtor and the Purchaser.

(vvv)      "**NAB**" means North American Bancard, LLC.

(www)      "**NAB Escrow**" means the $1 million escrow fund held by the Escrow Holder (as defined in the Asset Purchase Agreement) which was established from the proceeds of the Sale.

(xxx)      "**NAB Parties**" means the Purchaser and NAB.

(yyy)      "**New Board**" means the Board of Directors of the Reorganized Debtor.

(zzz)      "**New Common Stock**" means the new common share of the Reorganized Debtor to be authorized and/or issued to the New Common Stockholder under Section 5.4 of the Plan, with the rights of the holder thereof to be as provided for in the New Debtor Governing Documents.

(aaaa)      "**New Common Stockholder**" means SM Financial Services Corporation.

(bbbb)     "**New Debtor By-laws**" means the by-laws of the Reorganized Debtor substantially in the form included in the Plan Supplement.

(cccc)     "**New Debtor Charter**" means the certificate of incorporation of the Reorganized Debtor substantially in the form included in the Plan Supplement, which shall include the terms of the New Common Stock.

(dddd)     "**New Debtor Governing Documents**" means the New Debtor Charter and the New Debtor By-laws.

(eeee)     "**Old Securities**" means the Phoenix Preferred Stock, the Phoenix Common Stock and any promissory notes held by any creditor.

(ffff)     "**Other Priority Claim**" means a Claim against the Debtor entitled to priority pursuant to Bankruptcy Code Section 507(a), other than a Priority Tax Claim or an Administrative Claim.

(gggg)     "**Other Secured Claims**" means Secured Claims excluding the Bancorp Claim.

(hhhh)     "**Person**" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

(iiii)     "**Petition**" means the petition for relief commencing the Chapter 11 Case.

(jjjj)     "**Petition Date**" means August 4, 2014, the date on which the Debtor filed its Petition.

(kkkk)     "**Phoenix Common Stock**" means, collectively, any common equity in the Debtor outstanding prior to the Effective Date, as evidenced by those certain Stock Purchase Agreements, entered into by the Debtor and the Common Stockholders and that certain Settlement Agreement and Releases, dated as of April 5, 2013, made by and among Christopher Good, Moyer and the Debtor.  The term "**Phoenix Common Stock**" further includes, without limitation, any stock option or other right to purchase the common stock of the Debtor, together with any warrant, conversion right, restricted stock unit, right of first refusal, subscription, commitment, agreement, or other right to acquire or receive any such common stock in the Debtor that have been fully exercised prior to the Effective Date.

(llll)     "**PPSI Liquidating Trust**" means the trust established pursuant to the Liquidating Trust Agreement.

(mmmm)     "**Phoenix Preferred Stock**" means, collectively, Phoenix Series A Preferred Stock, Phoenix Series B-1 Preferred Stock, Phoenix Series B-2 Preferred Stock, the Phoenix Warrant for Series B-3 Preferred Stock, Phoenix Series B-4 Preferred Stock, and Phoenix Series C Preferred Stock, provided, however, that any Phoenix Preferred Stock that has been converted to Phoenix Common Stock shall be treated solely as Phoenix Common Stock.  The term "**Phoenix Preferred Stock**" further includes, without limitation, any stock option or other right to purchase the preferred stock of the Debtor, together with any warrant, conversion right, restricted stock unit, right of first refusal, subscription, commitment, agreement, or other right to acquire or receive any such preferred stock in the Debtor that have been fully exercised prior to the Effective Date.

(nnnn)     "**Phoenix Series A Preferred Stock**" means Series A preferred equity in the Debtor outstanding prior to the Effective Date.

(oooo)     "**Phoenix Series B-1 Preferred Stock**" means Series B-1 preferred equity in the Debtor outstanding prior to the Effective Date.

(pppp)     "**Phoenix Series B-2 Preferred Stock**" means Series B-2 preferred equity in the Debtor outstanding prior to the Effective Date.

8

(qqqq)    "**Phoenix Series B-4 Preferred Stock**" means, collectively, any Series B-4 preferred equity in the Debtor outstanding prior to the Effective Date.

(rrrr)    "**Phoenix Series C Preferred Stock**" means Series C preferred equity in the Debtor outstanding prior to the Effective Date.

(ssss)    "**Phoenix Warrant for Series B-3 Preferred Stock**" means that certain Phoenix Payment Systems, Inc. Warrant to Purchase Shares of Preferred Stock, issued on March 1, 2013 to Wollmuth Maher & Deutsch LLP by the Debtor to purchase from the Debtor fully paid and non assessable shares of the Debtor's Series B-3 preferred stock.

(tttt)    "**Plan**" means this plan of reorganization under Chapter 11 of the Bankruptcy Code and all implementing documents contained in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

(uuuu)    "**Plan Supplement**" means the supplement to the Plan, which may be filed in parts pursuant to Section 5.13 of the Plan, containing, without limitation, (i) the announcement of any change in the name of the Reorganized Debtor, (ii) identification of the members of the New Board as designated by the Debtor and the officers of the Reorganized Debtor, (iii) the New Debtor Governing Documents, (iv) the list of executory contracts and unexpired leases to be assumed pursuant to Section 6.3 of the Plan, (v) the Liquidating Trust Agreement, and (vi) the list of actions in which the PPSI Liquidating Trust retains Litigation Rights.

(vvvv)    "**POST**" means POST Integrations, Inc. and Ebocom, LLC.

(wwww)    "**Post-Confirmation Committee**" means the post-confirmation committee formed on the Effective Date upon the dissolution of the Committee and composed of all of the Committee members serving as of the Effective Date.

(xxxx)    "**Preferred Stockholders**" means the holders of the Phoenix Preferred Stock.

(yyyy)    "**Preferred Stock Interest**" means, collectively, (i) any Interests that are based upon or arise from Phoenix Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).    The term "**Preferred Stock Interests**" includes Series A Preferred Stock Interests, Series B-1 Preferred Stock Interests, Series B-2 Preferred Stock Interests, the Warrant for Series B-3 Preferred Stock Interests, Series B-4 Preferred Stock Interests, and Series C Preferred Stock Interests.

(zzzz)    "**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

(aaaaa)    "**Processor Agreement**" means that certain Processor Agreement, dated as of October 23, 2014, made by and between the Debtor and NAB.

(bbbbb)    "**Professional**" means any professional retained in the Chapter 11 Case by order of the Bankruptcy Court, whether by the Debtor or the Committee, excluding any of the Debtor's ordinary course professionals.

(ccccc)    "**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date, subject to any limitations imposed by order of the Bankruptcy Court.

(ddddd)    "**Pro Rata**" means, at any time, the proportion that the amount of a Claim or Interest in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims or Interests (including Disputed Claims or Interests), as applicable, in such Class or Classes, unless the Plan provides otherwise.

9

(eeeee)  "**Proof of Claim**" means a Proof of Claim filed in accordance with the Bar Date Order.

(fffff)  "**Proof of Interest**" means a Proof of Interest filed in accordance with the Bar Date Order.

(ggggg)  "**Purchaser Reserve**" means the reserve fund of $2 million segregated and held by the Reorganized Debtor for the exclusive benefit of the NAB Parties to secure the Reorganized Debtor's obligations under or to satisfy (in whole or in part) any claims asserted by the NAB Parties under the MSA and Processor Agreement. The Purchaser Reserve shall be reduced to $1 million following written confirmation by Bancorp of its submission of all Necessary Documentation (defined below) to VISA to apply for a change of ownership of the Debtor's endpoint connections with VISA to the applicable NAB Party or NAB's obtaining knowledge that such application has been submitted, which knowledge it shall convey to the Liquidating Trust promptly upon receipt.  Necessary Documentation includes fully completed and executed originals of the following: 1) Global Endpoint Review Questionnaire, 2) Audited Financials for past two years, 3) Executive Biographies, 4) Diagram of system architecture, 5) List of Data Centers, and 6) Proof of PCI-DSS Compliance.  Purchaser represents that all Necessary Documentation has been provided to Bancorp.  The Purchaser Reserve shall be closed and extinguished on the earlier of (i) the Termination Date (as defined in the MSA) or (ii) December 31, 2015. Upon closure of the Purchaser Reserve, or and to the extent of the reduction of the Purchaser Reserve, any Cash or other property held in the Purchaser Reserve that has not been paid to the NAB Parties or otherwise disbursed pursuant to the terms of the underlying agreements with respect to the Purchaser Reserve shall become the property of the PPSI Liquidating Trust.  The establishment of the Purchaser Reserve shall not be deemed a waiver, limitation of liability or maximum amount of any claims, causes of actions, or remedies that the NAB Parties may assert against the Debtor, Reorganized Debtor or PPSI Liquidating Trust, as applicable, except that no further or additional reserve need be established or held.  To the extent the Debtor or Reorganized Debtor, as applicable, has any payment obligations under the MSA and Processor Agreement, such obligations shall first be satisfied by cash held by the Reorganized Debtor or the Liquidating Trust and not from the Purchaser Reserve.

(hhhhh)  "**Purchaser**" means EPX Acquisition Company, LLC, an affiliate of NAB.

(iiiii)  "**Rejection Damages Claim**" means a Claim arising from the Debtor's rejection of a contract or lease, which Claim shall be limited in amount by any applicable provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Section 502, subsection 502(b)(6) thereof with respect a Claim of a lessor for damages resulting from the rejection of a lease of real property, subsection 502(b)(7) thereof with respect to a Claim of an employee for damages resulting from the rejection of an employment contract, or any other subsection thereof.

(jjjjj)  "**Reorganized Debtor**" means the reorganized Debtor or its successor on or after the Effective Date.

(kkkkk)  "**Reorganized Debtor Assets**" means (i) the MSA, (ii) the Processor Agreement, (iii) payments due, if any, under the MSA; (iv) payments due under the Processor Agreement after the Effective Date, (vi) the Debtor provided resources set forth in Section 3.4 of, and Schedule 3.4 to, the MSA, to the extent not already assigned or transferred to the Purchaser, and (vi) the assets required for the Reorganized Debtor to perform under the MSA and the Processor Agreement, including (a) the Purchaser Reserve to the extent set forth in Section 1.2(ggggg), and (b) the Debtor's rights and privileges arising under or related to the Assumed Contracts and the attorney-client privilege related or incidental to the Assumed Contracts.  For the avoidance of doubt, the Assumed Contracts which comprise Reorganized Debtor Assets shall not include any contract, agreement, arrangement or other document relating to the Indemnification Obligations, provided also that the Reorganized Debtor Assets do not include the Liquidating Trust Assets.

(lllll)  "**Request for Payment**" means a request for payment of an Administrative Claim filed with the Bankruptcy Court in connection with the Chapter 11 Case.

(mmmmm)    **"Rule 1007 List"** means the *Amended List of Equity Security Holders* [Docket No. 135].

(nnnnn)    **"Sale"** means the sale of substantially all of the Debtor's assets to the Purchaser which was approved by the Bankruptcy Court on September 23, 2014 and consummated on October 23, 2014.

(ooooo)    **"Sale Order"** means the *Order Authorizing and Approving (1) the Sale of Substantially All of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests; and (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related Relief* [Docket No. 249], as entered by the Bankruptcy Court on September 23, 2014.

(ppppp)    **"Schedules"** means the Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court on September 2, 2014 [Docket No. 129], and any amendments thereto.

(qqqqq)    **"Schubiger"** means Michael Schubiger.

(rrrrr)    **"Schubiger Claim"** means any Claim or Interest of any kind held by the Schubiger Entities.

(sssss)    **"Schubiger Entities"** means Schubiger, JEMS and Person related to or affiliated with any of the foregoing.

(ttttt)    **"Secured Claim"** means a Claim (i) that is secured by a Lien on property in which the Estate has an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the creditor of setoff against amounts owed to the Debtor; (ii) to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtor or (B) if disputed by the Debtor, such dispute is settled by written agreement between the Debtor or the Liquidating Trustee and the holder of such Claim or determined, resolved, or adjudicated by final, nonappealable order of a court or other tribunal of competent jurisdiction.

(uuuuu)    **"Series A Preferred Stock Interest"** means, collectively, (i) any Interests that are based upon or arise from Phoenix Series A Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Series A Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).

(vvvvv)    **"Series B Preferred Stock Interest"** means, collectively, the Series B-1 Preferred Stock Interests, the Series B-2 Preferred Stock Interests, the Warrants for Series B-3 Preferred Stock Interests and the Series B-4 Preferred Stock Interests.

(wwwww)    **"Series B-1 Preferred Stock Interest"** means, collectively, (i) any Interests that are based upon or arise from Phoenix Series B-1 Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Series B-1 Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).

(xxxxx)    **"Series B-2 Preferred Stock Interest"** means, collectively, (i) any Interests that are based upon or arise from Phoenix Series B-2 Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Series B-2 Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).

(yyyyy)    **"Series B-4 Preferred Stock Interest"** means, collectively, (i) any Interests that are based upon or arise from Phoenix Series B-4 Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Series B-4 Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).

(zzzzz)    **"Series C Preferred Stock Interest"** means, collectively, (i) any Interests that are based upon or arise from Phoenix Series C Preferred Stock and (ii) any Claims that are based upon or arise from Phoenix Series C Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).

(aaaaaa)     "**Settlement Agreement**" means the settlement agreement filed with the 9019 Motion by and between the Debtor, Frascella, DWF, JEMS and Moyer memorializing the terms of a resolution between the parties thereto with respect to Claims asserted by Frascella, DWF and JEMS against the Debtor.

(bbbbbb)     "**Stockholders**" means the Common Stockholders and the Preferred Stockholders.

(cccccc)     "**Taxes**" means (a) any taxes and assessments imposed by any Governmental Body, including net income, gross income, profits, gross receipts, license, employment, stamp, occupation, premium, alternative or add-on minimum, ad valorem, real property, personal property, transfer, real property transfer, value added, sales, use, environmental (including taxes under Code Section 59A), customs, duties, capital stock, franchise, excise, withholding, social security (or similar), unemployment, disability, payroll, fuel, excess profits, windfall profit, severance, estimated or other tax, including any interest, penalty or addition thereto, whether disputed or not, and any expenses incurred in connection with the determination, settlement or litigation of the Tax liability, (b) any obligations under any agreements or arrangements with respect to Taxes described in clause (a) above, and (c) any transferee liability in respect of Taxes described in clauses (a) and (b) above or payable by reason of assumption, transferee liability, operation of Law, Treasury Regulation Section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under Law) or otherwise.

(dddddd)     "**Transaction Retention Plan**" means that certain Phoenix Payment Systems, Inc. Transaction Retention Plan, as approved by the Debtor's board of directors on February 23, 2012.

(eeeeee)     "**Transaction Retention Plan Claim**" means a Claim arising under the Transaction Retention Plan.

(ffffff)     "**Unfiled Claim**" means a Claim as to which no Proof of Claim or Request for Payment has been filed.

(gggggg)     "**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Bankruptcy Code Section 1124.

(hhhhhh)     "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

(iiiiii)     "**Visa**" means VISA U.S.A. Inc.

(jjjjjj)     "**Warrant for Series B-3 Preferred Stock Interest**" means, collectively, (i) any Interests that are based upon or arise from the Phoenix Warrant for Series B-3 Preferred Stock and (ii) any Claims that are based upon or arise from the Phoenix Warrant for Series B-3 Preferred Stock and are subordinated pursuant to Bankruptcy Code Section 510(b).  To the extent that a Phoenix Warrant for Series B-3 Preferred Stock has not been exercised within the period set forth in the Phoenix Warrant for Series B-3 Preferred Stock, it shall not be an Allowed Interest.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.1     Introduction**

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

**2.2      Unclassified Claims**

In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims, DIP Facility Claims, and Priority Tax Claims have not been classified.

**2.3      Unimpaired Classes of Claims**

The following Classes contain Claims that are not Impaired by the Plan, are deemed to accept the Plan, and are not entitled to vote on the Plan.

*Class 1:  Other Priority Claims*

*Class 2a: Bancorp Claim*

*Class 2b: Other Secured Claims*

*Class 4:  Transaction Retention Plan Claims*

**2.4      Impaired Voting Classes of Claims and Interests**

The following Class contains Interests that are Impaired by the Plan and are entitled to vote on the Plan.

*Class 3a:  General Unsecured Claims*

*Class 3b:  Frascella Claims*

*Class 3c:  Schubiger Claims*

*Class 5a:  Series B Preferred Stock Interests*

*Class 5b:  Series A Preferred Stock Interests*

*Class 6:  Common Stock Interests and Series C Preferred Stock Interests*

**ARTICLE III**

**TREATMENT OF CLAIMS AND INTERESTS**

**3.1      Unclassified Claims**

(a)      **Administrative Claims**

With respect to each Allowed Administrative Claim, except as otherwise provided for in Section 10.1 and 10.11 of the Plan, on the Effective Date, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing; *provided*, *however*, that Allowed Administrative Claims other than Professional Fee Claims and Claims asserted under Section 503(b)(3) or (b)(4) with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

(b)      **DIP Facility Claim**

Any Allowed DIP Facility Claim shall be a fully Secured Claim under section 506(a) of the Bankruptcy Code and the Final DIP Order, without offset, counterclaim or any defense by the Debtor whatsoever.  On the applicable Distribution Date, the DIP Facility Lender shall:

13

(i)     with respect to any Allowed DIP Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Claim. the holder shall receive (A) payment of such Allowed DIP Facility Claim in Cash or  (B) such different treatment as to which the DIP Facility Lender and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(ii)     with respect to any Allowed DIP Indemnified Liabilities Claim arising prior to the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Indemnified Liabilities Claim, receive (A) payment of such Allowed Indemnified Liabilities Claim in Cash or (B) such different treatment as to which the DIP Facility Lender and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(iii)     with respect to any Allowed DIP Indemnified Liabilities Claim arising after the Effective Date, in full satisfaction, settlement, release, discharge of and in exchange for such Allowed DIP Indemnified Liabilities Claim, receive solely from the Bancorp DIP Reserve (A) payment of such Allowed DIP Indemnified Liabilities Claim or (B) such different treatment as to which the DIP Facility Lender and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(iv)     with respect to any Allowed DIP Enforcement Indemnity Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Enforcement Indemnity Claim, receive solely from the Bancorp DIP  Reserve (A) payment of such Allowed DIP Enforcement Indemnity Claim or (B) such different treatment as to which the DIP Facility Lender and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

Notwithstanding anything contained herein, the liens or other security interests in favor of the DIP Facility Lender on account of the DIP Facility Claim shall continue in (i) the Bancorp Reserves, (ii) the contingent indemnification obligations subject to and in accordance with Section 10.3 of the DIP Credit Agreement, and (iii) the Lender Expenses (as defined in the DIP Credit Agreement), and shall not be released until such time as all obligations to the DIP Facility Lender under the DIP Credit Agreement and Final DIP Order have been fully satisfied.

(c)     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Debtor or by the Liquidating Trustee, either (i) on the Effective Date, Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with Bankruptcy Code Section 1129(a)(9)(C), or (iii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.  For the avoidance of doubt, any Claim for Taxes arising from or triggered by the Sale shall be the sole and exclusive obligation of the Debtor or the PPSI Liquidating Trust and not of the Reorganized Debtor, the Purchaser or the New Common Stockholder; and any tax assessment relating to periods after the Effective Date shall be the responsibility of the Reorganized Debtor rather than the Debtor or the PPSI Liquidating Trust.

**3.2     Unimpaired Classes of Claims**

(a)     **Class 1:  Other Priority Claims**

On the applicable Distribution Date, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, either (i) Cash equal to the unpaid portion of such Allowed Other Priority Claim or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(b)    **Class 2a: Bancorp Claim**

Bancorp holds an Allowed Secured Claim in the amount of $2,233,304.00 as of October 23, 2014, plus additional interest, fees, and costs, as accruing pursuant to the Bancorp Credit Agreements.  The amount set forth in the prior sentence shall be and is Allowed without offset, counterclaim or any defense whatsoever, as a fully Secured Claim under Section 506(a) of the Bankruptcy Code and the Final DIP Order.  The Bancorp Claim is separate from, and in addition to, any DIP Facility Claim that Bancorp, as the DIP Facility Lender, may be entitled to under the DIP Facility.

On the applicable Distribution Date, Bancorp shall receive, in full satisfaction, settlement, release and discharge of and in exchange for the Bancorp Claim, either (i) Cash equal to the amount of the Bancorp Claim or (ii) such different treatment as to which Bancorp and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.  Upon satisfaction in full of the Bancorp Claim, any corresponding Liens of Bancorp with respect to the Bancorp Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes, except for (i) the Bancorp Reserves, (ii) the contingent indemnification obligations subject to and in accordance with Section 10.3 of the DIP Credit Agreement and (iii) the Lender Expenses (as defined in the DIP Credit Agreement).

(c)    **Class 2b:  Other Secured Claims**

On the applicable Distribution Date, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, either (i) Cash equal to the amount of such Allowed Other Secured Claim or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

Upon satisfaction in full of each Allowed Other Secured Claim, the corresponding Lien shall be released, deemed null and void, and unenforceable for all purposes.  Nothing in the Plan shall preclude the Debtor or the Liquidating Trustee from challenging the validity of any Lien on any asset of the Debtor or the value of the property that secures any alleged Lien.

(d)    **Class 4:  Transaction Retention Plan Claims**

On the applicable Distribution Dates, each holder of an Allowed Transaction Retention Plan Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Transaction Retention Plan Claim, either (i) Cash equal to the percentage of the amounts that would have been paid to Stockholders as set forth in the Transaction Retention Plan with respect to such holder or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

Unless any payment will be made to Classes 5a, 5b or 6, no payment will be made on account of the Transaction Retention Plan Claims pursuant to the terms of the Transaction Retention Plan.

**3.3    Impaired Voting Classes of Claims and Interests**

(a)    **Class 3a:  General Unsecured Claims**

On the applicable Distribution Dates, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, either (i) a Pro Rata share of the Cash available for distribution to Classes 3a-c after the satisfaction of the Unclassified Claims, the Other Priority Claims, the Bancorp Claim and the Other Secured Claims; or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(b)    **Class 3b:  Frascella Claims**

On the applicable Distribution Dates, each holder of an Allowed Frascella Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Frascella Claim, the treatment specified in the 9019 Motion and the Settlement Agreement.

(c)    **Class 3c:  Schubiger Claims**

On the applicable Distribution Dates, each holder of an Allowed Schubiger Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Schubiger Claim, the treatment specified in the 9019 Motion and the Settlement Agreement.

For the avoidance of doubt, the holders of Claims in Classes 3a-c shall share Pro Rata pursuant to the following formula:

$$\frac{\text{Cash available for distribution to Claims in Classes 3a-c}}{\text{Claims in Classes 3a-c}}$$

(d)    **Class 5a:  Series B Preferred Stock Interests**

On the applicable Distribution Dates, each holder of an Allowed Series B Preferred Stock Interest that has not or is not deemed to have exercised conversion rights, if any, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Series B Preferred Stock Interest, either (i) a Pro Rata share of the Cash available for distribution after satisfaction of Claims in Class 4, at the fixed liquidation preference or redemption price, if any, of such Allowed Series B Preferred Stock Interest or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(e)    **Class 5b:  Series A Preferred Stock Interests**

On the applicable Distribution Dates, each holder of an Allowed Series A Preferred Stock Interest that has not or is not deemed to have exercised conversion rights, if any, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Series A Preferred Stock Interest, either (i) a Pro Rata share of the Cash available for distribution after full satisfaction of Interests in Class 5a and Claims in Class 4 at the fixed liquidation preference or redemption price, if any, of such Allowed Series A Preferred Stock Interest or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

(f)    **Class 6:  Common Stock Interests and Series C Preferred Stock Interests**

On the applicable Distribution Date, each holder of an Allowed Common Stock Interest and an Allowed Series C Preferred Stock Interest shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Common Stock Interest or Allowed Series C Preferred Stock Interest, either (i) its Pro Rata share of the remaining Cash of the Estate and the PPSI Liquidating Trust after the distribution to the holders of Claims in Class 4 and Interests in Classes 5a and 5b or (ii) such different treatment as to which such holder and the Debtor or the Liquidating Trustee, as applicable, shall have agreed upon in writing.  Section 7.8 relating to setoff shall apply in all respects to the holders of allowed Class 6 Interests.  For the avoidance of doubt, Series C Preferred Stock Interest holders shall not receive any special rights beyond Common Stockholder Interests because no such special rights were triggered under the applicable certificate of designation.

**3.4    Reservation of Rights Regarding Claims and Interests**

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's, the Reorganized Debtor's, the PPSI Liquidating Trust's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.  Similarly, nothing herein shall prejudice or be deemed to prejudice creditors' rights of setoff or recoupment.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**4.1    Impaired Classes Entitled to Vote**

Holders of Claims and Interests in the Impaired Classes of Claims and Interests are each entitled to vote as a Class to accept or reject the Plan.  Accordingly, the votes of holders of Interests in Classes 3a, 3b, 3c, 5a, 5b and 6 shall be solicited with respect to the Plan.

**4.2    Acceptance by an Impaired Class**

In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), the Impaired Classes of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  In accordance with Bankruptcy Code Section 1126(d), and except as provided in Bankruptcy Code Section 1126(e), the Impaired Classes of Interests shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount of the Allowed Interests of such Class that have timely and properly voted to accept or reject the Plan.

**4.3    Presumed Acceptances by Unimpaired Classes**

Claims and Interests in Classes 1, 2a, 2b and 4 are Unimpaired under the Plan.  Under Bankruptcy Code Section 1126(f), holders of such Unimpaired Claims and Interests are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim and Interest holders shall not be solicited.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Continued Corporate Existence**

The Reorganized Debtor shall continue to exist as of and after the Effective Date as a legal entity, in accordance with the applicable laws of the State of Delaware and pursuant to the New Debtor Governing Documents.  The Reorganized Debtor reserves the right to change its name, with any such name change to be acceptable to the Debtor, to be announced in the Plan Supplement and to be effective upon the Effective Date.

**5.2    Certificate of Incorporation and By-laws**

The certificate of incorporation and by-laws of the Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Bankruptcy Code Section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Bankruptcy Code Section 1123(a)(6) and limited as necessary to facilitate compliance with applicable non-bankruptcy federal laws governing foreign ownership of the Debtor. The certificate of incorporation and by-laws of the Debtor, as amended, shall constitute the New Debtor Governing Documents.

The New Debtor Governing Documents shall be in substantially the forms of such documents included in the Plan Supplement and shall be in full force and effect as of the Effective Date.

### 5.3    Cancellation of Interests

On the Effective Date, all Old Securities, including all promissory notes, stock, instruments, warrants, certificates and other documents evidencing the Preferred Stock Interests and the Common Stock Interests shall be deemed automatically cancelled and surrendered and shall be of no further force in accordance with Section 7.6 of the Plan, and the obligations of the Debtor thereunder or in any way related thereto, including any obligation of the Debtor to pay any franchise or similar type taxes on account of such Interests, shall be discharged.

### 5.4    Authorization and Issuance of the New Common Stock

(a)    On the Effective Date, the Reorganized Debtor shall issue 1 share of New Common Stock to the New Common Stockholder.

(b)    The rights of the holder of New Common Stock shall be as provided for in the New Debtor Governing Documents.

### 5.5    Directors and Officers of Reorganized Debtor

(a)    Upon the Effective Date, the New Board shall consist of one (1) member, as identified in the Plan Supplement; provided, however, that the Plan Supplement may list more than one director, in which case, the New Board shall consist of all listed members.  Thereafter, the New Board shall serve in accordance with the New Debtor Governing Documents.

(b)    Upon the Effective Date, the officers of the Reorganized Debtor shall be the officers set forth in the Plan Supplement.

(c)    All officers and directors of the Debtor not listed in the Plan Supplement will be deemed to have resigned on the Effective Date.

(d)    As of the Effective Date, that certain engagement letter, dated February 3, 2014, by and between the Debtor and PMCM, LLC, pursuant to which the chief restructuring officer was retained by the Debtor, is terminated, with the effect of such termination being as set forth in the underlying documents.

### 5.6    Corporate Action; Effectuating Documents

(a)    On the Effective Date, the adoption and filing of the New Debtor Governing Documents and all actions contemplated by the Plan shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor, the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders or directors of the Debtor or the Reorganized Debtor, and shall be fully authorized pursuant to Section 303 of the Delaware General Corporation Law.

(b)    Any director, chief executive officer, president, chief financial officer, senior vice president, general counsel or other appropriate officer of the Reorganized Debtor shall be authorized to execute, deliver, file, or record the documents included in the Plan Supplement and such other contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Any director, secretary or assistant secretary of the Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.  All of the foregoing is authorized without the need for any required approvals, authorizations, or consents except for express consents required under the Plan.

(c)      Upon satisfaction of all of the Reorganized Debtor's obligations under the MSA and the Processor Agreement, the New Board, in its sole discretion, shall cause the Reorganized Debtor to: (a) file a certificate of dissolution or such similar document, together with all other necessary corporate documents, to effect its dissolution; and (b) complete and file its final federal, state and local tax returns.  The filing by the Reorganized Debtor of a certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the New Board, pursuant to Section 303 of the Delaware General Corporation Law.

**5.7      Revesting of Reorganized Debtor Assets**

Except as otherwise provided herein, the Reorganized Debtor Assets shall revest in the Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or Bankruptcy Court approval.  Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests, and all Liens with respect thereto.  For the avoidance of doubt, the Liquidating Trust Assets shall not revest in the Reorganized Debtor.  Such assets shall vest in the PPSI Liquidating Trust pursuant to Section 5.9 of the Plan.

**5.8      Appointment of the Liquidating Trustee**

PMCM 2, LLC shall be appointed as the Liquidating Trustee.  Delaware Trust Company shall serve as the Delaware Statutory Trustee.  PMCM 2, LLC is expected to have Michael E. Jacoby as its designated officer for the purposes of administering the PPSI Liquidating Trust.  To the extent PMCM 2, LLC declines or is unable to serve, the Debtor, in consultation with the Committee, shall appoint another Liquidating Trustee on or prior to the Confirmation Date.  The Liquidating Trustee shall serve accordance with the Liquidating Trust Agreement and the Plan.

**5.9      The PPSI Liquidating Trust**

(a)      On the Effective Date, the PPSI Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) resolving and/or litigating Disputed Claims, (c) pursuing or determining not to pursue actions preserved pursuant to the Litigation Rights, and (d) making all distributions to the Beneficiaries provided for under the Plan. The PPSI Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d).

(b)      On the Effective Date, the Liquidating Trust Assets shall vest automatically in the PPSI Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the PPSI Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries.  The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the PPSI Liquidating Trust in exchange for the beneficial interests in the PPSI Liquidating Trust.  The Beneficiaries shall be treated as the grantors and owners of the PPSI Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets, the PPSI Liquidating Trust shall succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

(c)      On the Effective Date, the Liquidating Trustee, and not the Reorganized Debtor, shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the PPSI Liquidating Trust, including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) prosecute, settle, abandon or

compromise any actions relating to the Litigation Rights; (4) make distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such Disputed Claims; (7) employ and compensate professionals and other agents, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the PPSI Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; and (8) control attorney/client privilege relating to or arising from the Liquidating Trust Assets.

(d)     Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trust Expenses on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

(e)     The PPSI Liquidating Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidating Trust Agreement.  In addition, the PPSI Liquidating Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

## 5.10    Insurance

The PPSI Liquidating Trust may maintain director and officer insurance coverage, and for a tail period of 3 years, for those Persons covered by any such policies in effect during the pendency of the Chapter 11 Case, continuing after the Effective Date, insuring such Persons in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for, or on behalf of the Debtor (whether occurring before or after the Petition Date).  Such policies shall be fully paid and noncancellable.  If not purchased by the Debtor before the Effective Date, on or after the Effective Date, the PPSI Liquidating Trust shall purchase director and officer insurance covering the period on or after the Effective Date.

## 5.11    Preservation of Rights of Action; Resulting Claim Treatment

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Section 10.5(a) hereof, the PPSI Liquidating Trust and the Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all causes of action in which the Debtor or the Estate has Litigation Rights, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Plan Supplement, and the PPSI Liquidating Trust and the Liquidating Trustee's rights to commence, prosecute, or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. The PPSI Liquidating Trust and the Liquidating Trustee may pursue such causes of action, as appropriate, in accordance with the best interests of the PPSI Liquidating Trust and the Beneficiaries.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against it as any indication that the Debtor,  PPSI Liquidating Trust or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against it. The Debtor, PPSI Liquidating Trust or the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all causes of action against any Person, except as otherwise expressly provided in the Plan or pursuant to the terms of the Asset Purchase Agreement.**  Unless any causes of action against any Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order (including, but not limited to, the Final DIP Order), the Debtor, the PPSI Liquidating Trust and the Liquidating Trustee expressly reserve all causes of action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such causes of action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any causes of action in which the Debtor has Litigation Rights that the Debtor may hold against any Person shall vest in the PPSI Liquidating Trust. The PPSI Liquidating Trust or the Liquidating Trustee, through their authorized agents or representatives, and in consultation with the Post-Confirmation Committee shall retain and may exclusively enforce any and all such causes of action. The PPSI Liquidating Trust and the Liquidating Trustee, in consultation with the Post-Confirmation Committee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such causes of action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**5.12    Exemption From Certain Transfer Taxes**

Pursuant to Bankruptcy Code Section 1146(a), any transfers from the Debtor to the PPSI Liquidating Trust or any other Person pursuant to, in contemplation of, or in connection with the Plan, and the issuance, transfer, or exchange of any debt, equity securities or other interest under or in connection with the Plan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement and all documents necessary to evidence and implement any of the transactions and actions described in the Plan or the Plan Supplement. For the avoidance of doubt, the Sale and all other pre-confirmation transfers or sales do not qualify for an exemption pursuant to Section 1146(a) of the Bankruptcy Code.

**5.13    Plan Supplement**

The Plan Supplement may be filed in parts either contemporaneously with the filing of the Plan or from time to time thereafter, but in no event later than one (1) week prior to the deadline established by the Bankruptcy Court for objecting to the Disclosure Statement. After filing, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. The Plan Supplement also will be available for inspection on (a) the website maintained by the Claims Agent: http://www.omnimgt.com/epx, and (b) the Bankruptcy Court's website: http://www.deb.uscourts.gov. In addition, holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request in accordance with Section 10.16 of the Plan.

**5.14    Committee**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; and (iii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan, the Confirmation Order or the Liquidating Trust Agreement. Professionals retained by the Committee or the Debtor shall be entitled to compensation for services rendered and Professionals retained by the Committee or the Debtor and the members of the Committee shall be entitled to reimbursement of expenses incurred after the Effective Date in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date.

**5.15    Post-Confirmation Committee**

(a)    On the Effective Date, the Committee shall be reconstituted as the Post-Confirmation Committee, with all of its members and retained Professionals.  The bylaws previously adopted by the Committee shall continue to govern the actions of the Post-Confirmation Committee, and the fiduciary duties, including rights to immunity, that applied to the Committee prior to the Effective Date shall apply to the Post-Confirmation Committee, including those set forth in Bankruptcy Code sections 1102 and 1103. These bylaws may be amended from time to time by the Post-Confirmation Committee in its discretion.

(b)    The Post-Confirmation Committee shall have the duties set forth herein to help implement this Plan and to maximize distributions to holders of Claims, including those duties set forth in the Liquidating Trust Agreement.

(c)    The duties and powers of the Post-Confirmation Committee shall terminate on the later to occur of (i) the settlement or other resolution of all Disputed Claims on a final basis, except for the Disputed Claim filed by POST and those Claims set forth in the Plan Supplement and (ii) the payment of the final distributions to all creditors in Classes 3a-3c pursuant to the Plan, except for the Disputed Claim filed by POST and those Claims set forth in the Plan Supplement.  Upon termination of its duties in connection with this Section 5.15(c) and satisfaction of all requests for payment of outstanding expenses of the members of the Post-Confirmation Committee, including outstanding fees and expenses of Professionals of the Post-Conformation Committee, the Post-Confirmation Committee will automatically dissolve without any further action needed to effectuate such dissolution.   Any provision in this Plan that provides for consultation with the Committee or the Post-Confirmation Committee requires no consultation upon the Post-Confirmation Committee's dissolution.

(d)    The Post-Confirmation Committee shall retain and be deemed to have retained the Committee Professionals on the Effective Date.  All reasonable fees and expenses of the Post-Confirmation Committee Professionals shall be borne by the PPSI Liquidating Trust and paid by the Liquidating Trustee within thirty (30) days after submission of an invoice unless the Liquidating Trustee objects to reasonableness prior to the 30th day.

**ARTICLE VI**

**TREATMENT OF CONTRACTS AND LEASES**

**6.1    Rejection of Contracts and Leases**

On the Effective Date, except for the executory contracts and unexpired leases listed on the Plan Supplement, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court, including, but not limited to, the Sale Order, or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to section 365 of the Bankruptcy Code.  Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtor, its Estate and all parties in interest in the Chapter 11 Case.

**6.2    Claims Based of Rejection of Executory Contracts of Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Section 6.1 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease

pursuant to Section 6.1 for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, its successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Section 10.6. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

**6.3     Assumption of Contracts and Leases**

(a)     Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtor shall assume each of the respective executory contracts and unexpired leases, if any, listed as Assumed Contracts in the Plan Supplement; provided, however, that the Debtor reserves the right, at any time prior to the Effective Date, to amend the Plan Supplement to: (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant hereto; or (b) add any executory contract or unexpired lease to the Plan Supplement, thus providing for its assumption pursuant to this Section 6.3. The Debtor shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and to the parties on the then-applicable service list in the Chapter 11 Case. Nothing herein or in the Plan Supplement shall constitute an admission by the Debtor that any contract or lease is an executory contract or unexpired lease or that a Debtor has any liability thereunder.

(b)     Each executory contract or unexpired lease assumed under this Section 6.3 shall include any modifications, amendments, supplements or restatements to such contract or lease.

(c)     Section 2.1 of the MSA, which is being assumed by the Debtor, is deemed amended by agreement of the parties to the contract to include a new Section 2.1(a) and 2.1(b), which is attached to the revised Plan Supplement.

**6.4     Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

Any Cure Claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code: (1) by payment of the Cure Claim in Cash on or after the Effective Date; or (2) on such other terms as are agreed to by the parties to such executory contract or unexpired lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is an unresolved dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of such dispute by the parties or the entry of a Final Order resolving the dispute and approving the assumption.

**6.5     Certain Indemnification Obligations**

(a)     Indemnification Obligations owed to those of the Debtor's directors and officers serving on and after the Petition Date shall survive the Effective Date of the Plan and remain unaffected by the Plan, irrespective of whether obligations are owed in connection with a prepetition or postpetition occurrence. To the extent necessary, such obligations shall be deemed to be, and shall be treated as though they are, contracts that are assumed pursuant to Bankruptcy Code Section 365 under the Plan, and such Indemnification Obligations (subject to any defenses thereto).

(b)     Indemnification Obligations owed to any of the Debtor's Professionals pursuant to Bankruptcy Code Sections 327 or 328 and order of the Bankruptcy Court, whether such Indemnification Obligations relate

to the period before or after the Petition Date, shall be deemed to be, and shall be treated as though they are, contracts that are assumed pursuant to Bankruptcy Code Section 365 under the Plan.

**6.6      Extension of Time to Assume or Reject**

Notwithstanding anything set forth in Article VI of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the Debtor's right to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed rejection provided for in Section 6.1 of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1      Determination of Allowability of Claims and Interests and Rights to Distributions**

(a)      Only holders of Allowed Claims and Allowed Interests shall be entitled to receive distributions under the Plan.

(b)      With respect to Filed Claims or filed Proofs of Interest, the Debtor, the Liquidating Trustee or any other party in interest with standing shall have the right to object to the Proofs of Claim, Requests for Payment or Proofs of Interest in the Bankruptcy Court by the Claims Objection Deadline (as extended), but shall not be required to do so.

(c)      No distribution shall be made on a Disputed Claim or a Disputed Interest until and unless such Disputed Claim becomes an Allowed Claim and such Disputed Interest becomes an Allowed Interest.  Prior to making any distribution to holders of Claims or Interests in Classes 3a-6, the Liquidating Trustee, in consultation with the Post-Confirmation Committee, shall establish a separate Disputed Claims Reserve for Disputed Claims and Disputed Interests, each of which Disputed Claims Reserves shall be administered by the Liquidating Trustee.  The Liquidating Trustee shall reserve in Cash or other property, for Distribution on account of each Disputed Claim or Disputed Interest, the full asserted amount (or such lesser amount as may be estimated or otherwise ordered by the Bankruptcy Court in accordance with Section 7.4 of the Plan or otherwise) with respect to each Disputed Claim.

(d)      The Liquidating Trustee shall hold property in the Disputed Claims Reserves in trust for the benefit of the holders of Claims and Interests ultimately determined to be Allowed.  Each Disputed Claims Reserve shall be closed and extinguished by the Liquidating Trustee when all distributions and other dispositions of Cash or other property required to be made under the Plan will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claims Reserve, all Cash or other property held in that Disputed Claims Reserve shall revest in and become the property of the PPSI Liquidating Trust.  All funds or other property that vest or revest in the PPSI Liquidating Trust pursuant to this paragraph shall be used to pay the fees and expenses of the Liquidating Trustee as and to the extent set forth in the Liquidating Trust Agreement, and thereafter distributed on a Pro Rata basis to holders of Allowed Claims and Interests pursuant to the remaining provisions of this Plan at a time determined in the sole discretion of the Liquidating Trustee.

**7.2      Procedures for Making Distributions to Holders of Allowed Claims and Allowed Interests**

(a)      The Liquidating Trustee shall serve as the Disbursing Agent under the Plan.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

24

(b)  The Disbursing Agent shall send distributions to the holders of the Allowed Claims and Allowed Interests at the addresses listed for such holder in the Schedules or on the applicable Proof of Claim, Proof of Interest, or notice of transfer of a Claim or Interest filed at least 5 days before the Effective Date.

(c)  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified by the Reorganized Debtor, the Claims Agent, or such holder of such holder's then current address, at which time all missed distributions shall be made, subject to Section 7.2(d) of the Plan, to such holder without interest. If any distribution is made by check and such check is not returned but remains uncashed for three (3) months after the date of such check, the Disbursing Agent may cancel and void such check, and the distribution with respect thereto shall be deemed undeliverable. If, pursuant to Section 7.7 of the Plan, any holder is requested to provide an applicable Internal Revenue Service form or to otherwise satisfy any tax withholding requirements with respect to a distribution and such holder fails to do so within three (3) months of the date of such request, such holder's distribution shall be deemed undeliverable.

(d)  Amounts in respect of returned or otherwise undeliverable or unclaimed distributions made by the Disbursing Agent on behalf of the PPSI Liquidating Trust shall be returned to or deemed to revest in the PPSI Liquidating Trust until such distributions are claimed. All claims for returned or otherwise undeliverable or unclaimed distributions must be made (i) on or before the first (1st) anniversary of the Effective Date or (ii) with respect to any distribution made later than such date, on or before six (6) months after the date of such later distribution; after which date all undeliverable property shall revert and revest in to the PPSI Liquidating Trust free of any restrictions thereon and the claims of any holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. In the event of a timely claim for any returned or otherwise undeliverable or unclaimed distribution, the Liquidating Trustee shall deliver the applicable distribution amount or property to the Disbursing Agent for distribution pursuant to the Plan.

(e)  The Disbursing Agent may elect not make a Distribution of less than $50.00 to any holder of an Allowed Claim or Interest unless the Distribution is a Final Distribution. If, at any time, the Liquidating Trustee determines that the remaining Cash and other Assets are not sufficient to make Distributions to holders of Allowed Claims and Interests in an amount that would warrant the PPSI Liquidating Trust incurring the cost of making such a Distribution, the Liquidating Trustee may dispose of such remaining Cash and other Assets in a manner the Liquidating Trustee deems to be appropriate, including donating it to a charitable organization.

**7.3    Application of Distribution Record Date**

On the applicable Distribution Record Date, (a) for all Claims, the Debtor's books and records for Unfiled Claims and the claims register maintained by the Claims Agent for Filed Claims and (b) for Interests, the records of the Debtor shall be closed for purposes of determining the record holders of Claims or Interests, and there shall be no further changes in the record holders of any Claims or Interests. Except as provided herein, the Liquidating Trustee, the Disbursing Agent(s) and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims or Interests occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the applicable books and records, claims registers or transfer ledgers as of 5:00 p.m. prevailing Eastern time on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

**7.4    Provisions Related to Disputed Claims**

(a)  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the PPSI Liquidating Trust shall have the right to make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the PPSI Liquidating Trust. From and after the Effective Date, in consultation with

25

the Post-Confirmation Committee, the Liquidating Trustee and any claimant may elect to compromise, settle or otherwise resolve any objection to a Disputed Claim without approval of the Bankruptcy Court. Notwithstanding anything in the Plan, the U.S. Trustee's rights to object to Claims, including Professional Fee Claims and Claims asserted under Section 503(b)(3) or (b)(4), are fully reserved.

(b)     All objections to Disputed Claims shall be filed and served upon the holders of each such Claim not later than the Claim Objection Deadline (as extended).

(c)     At any time, (a) prior to the Effective Date, the Debtor, and (b) subsequent to the Effective Date, the PPSI Liquidating Trust, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the PPSI Liquidating Trust has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Liquidating Trustee, as applicable, may elect to object to the ultimate allowance of the Claim or seek to reduce and allow the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(d)     There shall be no distribution on account of any Claims held by any Person from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that the Liquidating Trust has Litigation Rights with respect to such action and has brought such action prior to the applicable Distribution Date, until such time as such cause of action against that entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Person have been turned over or paid to the Debtor.

(e)     **EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE GENERAL BAR DATE ORDER, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**7.5     Adjustment of Claims Without Objection**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted on the Claims Register by the Claims Agent at the direction of the Debtor or the Liquidating Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**7.6     Surrender of Cancelled Old Securities**

As a condition precedent to receiving any distribution on account of its Allowed Interest, each holder of an Allowed Common Stock Interest and an Allowed Preferred Stock Interest shall be deemed to have surrendered any stock certificate or other documentation underlying each such Interest, and any such stock certificates and other documentation shall be deemed to be cancelled pursuant to Section 5.3 of the Plan.

**7.7    Withholding and Reporting Requirements**

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the holder of an Allowed Claim or Allowed Interest complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or Allowed Interest that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the applicable Disbursing Agent to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Disbursing Agent, as the case may be, until such time as the Disbursing Agent is satisfied with the holder's arrangements for any withholding tax obligations.

**7.8    Setoffs**

(a)    The Liquidating Trustee may, but shall not be required to, set off against any Claim or Interest, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim or Interest, claims of any nature whatsoever that the Debtor or the Liquidating Trustee may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the PPSI Liquidating Trust of any such claim that the Debtor or the PPSI Liquidating Trust may have against such holder.

(b)    For the avoidance of doubt, any distribution due to Moyer on account of Claims or Interests held by Moyer shall be reduced by the Moyer Setoff Amounts. The holders of Interests in Class 6 of this Plan, including Moyer or any successor in interest to Moyer's Claims against and Interests in the Estate or the Liquidating Trust Assets, shall be entitled to amounts withheld from Moyer on account of the Moyer Setoff Amounts to the extent that the Moyer Setoff Amounts are setoff against his Classes 5a, 5b or 6 distributions.

**7.9    Prepayment**

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the PPSI Liquidating Trust shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided*, *however*, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**7.10    No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**7.11    Allocation of Distributions**

All distributions received under the Plan by holders of applicable Claims shall be deemed to be allocated first to the principal amount of such Claim and then to accrued pre-petition interest, if any, with respect to such Claim.

RLF1 10931266v.12

ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**8.1** **Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 8.3 of the Plan:

(a)    an order pursuant to Bankruptcy Code Section 1125 shall have been entered finding that the Disclosure Statement contains adequate information; and

(b)    the proposed Confirmation Order shall have been submitted to the Court.

**8.2** **Conditions to Effective Date**

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 8.3 of the Plan:

(a)    the Confirmation Order shall have been entered;

(b)    the Confirmation Order shall, among other things:

(i)    provide that the Debtor, the Reorganized Debtor, the Committee and the Liquidating Trust are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the transactions contemplated by and the contracts, instruments, releases, indentures, and other agreements or documents created under or in connection with the Plan; and

(ii)    authorize the issuance of the New Common Stock.

(c)    the Confirmation Order shall not then be stayed, vacated, or reversed;

(d)    all other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, or will be effected or executed contemporaneously with implementation of the Plan;

(e)    the New Common Stockholder accepts the New Common Stock; and

(f)    the fees and expenses required to be paid on the Effective Date pursuant to Section 10.2 of the Plan shall have been paid in full in Cash.

**8.3**    **Waiver of Conditions**

Each of the conditions set forth in Sections 8.1 and 8.2, with the express exception of the conditions contained in Sections   8.1(a)(i), 8.2(a) and 8.2(f), may be waived in whole or in part by the Debtor in consultation with the Committee without any notice to parties in interest or the Bankruptcy Court and without a hearing.

**8.4**    **Operations of the Debtor Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all Final Orders.

**8.5    Effective Date**

On or within one Business Day of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date.  Such notice shall contain the deadline by which all parties will be required to file and serve any Request for Payment for any unpaid Administrative Claims, including, but not limited to, Professional Fee Claims and any substantial contribution claims.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

**9.1    Scope of Retention of Jurisdiction**

Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim (whether a Filed Claim or Unfiled Claim) or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including, without limitation, the resolution of any Request for Payment  and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)      hear and determine all applications for Professional Fees; *provided*, *however*, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtor, the Post-Confirmation Committee or the PPSI Liquidating Trust shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)      hear and determine all matters with respect to contracts or leases or the assumption or rejection of any contracts or leases to which a Debtor was a party or with respect to which the Debtor may be liable, including, if necessary and without limitation, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)      effectuate performance of and payments under the provisions of the Plan;

(e)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Litigation Rights, including, without limitation, any matters arising out of the Asset Purchase Agreement, the Sale Order, the MSA or the Processor Agreement;

(f)      enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with the Plan, *provided*, *however*, that any dispute arising under or in connection with the New Debtor Governing Documents shall be adjudicated in accordance with the provisions of the applicable document;

(h)      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)        enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)        hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)        enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case or provided for under the Plan;

(m)        except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

(n)        hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

(o)        hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

(p)        hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)        enter a final decree closing the Chapter 11 Case.

## 9.2    Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 9.1 of the Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

ARTICLE X

MISCELLANEOUS PROVISIONS

## 10.1    Administrative Expense Claims, Professional Fee Claims and Substantial Contribution Claims

Except as set forth in Section 10.11 of the Plan, all final Requests for Payment of Administrative Expense Claims, Professional Fee Claims and any substantial contribution claims under Section 503(b) of the Bankruptcy Code must be filed and served on the PPSI Liquidating Trust, its counsel, and other necessary parties in interest no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such Requests for Payment must be filed and served on the PPSI Liquidating Trust, its counsel, and the requesting Professional or other entity no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable Request for Payment was served.

**10.2    Payment of Statutory Fees**

All quarterly fees payable pursuant to Section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtor on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by the PPSI Liquidating Trust as and when due, until such time as the Chapter 11 Case is closed, dismissed or converted.

**10.3    Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the PPSI Liquidating Trust, the Reorganized Debtor and all other parties in interest in the Chapter 11 Case.

**10.4    Preservation of Subordination Rights**

Nothing contained in this Plan shall be deemed to modify, impair, terminate or otherwise affect in any way the rights of any Entity under section 510(a) of the Bankruptcy Code, and all such rights are expressly preserved under this Plan.  The treatment set forth in Article III of the Plan and the distributions to the various Classes of Claims and Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise expressly compromised and settled pursuant to the Plan.

**10.5    Releases**

(a)    **Releases by the Debtor**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Reorganized Debtor, the PPSI Liquidating Trust, the Liquidating Trustee and any Person (including the Committee) seeking to exercise the rights of the Debtor's Estate, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than for fraud, willful misconduct, criminal conduct and/or gross negligence), whether direct or derivative, in connection with or related to the Debtor, the Chapter 11 Case, or the Plan (other than the rights of the Debtor, the Committee, the Post-Confirmation Committee, the Reorganized Debtor, the PPSI Liquidating Trust and the Liquidating Trustee to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date against (i) any of the directors and officers of the Debtor serving during the pendency of the Chapter 11 Case, (ii) any Professionals of the Debtor, (iii) the DIP Facility Lender, (iv) the members of the Committee, but only in their respective capacities on behalf of the Committee, (v) any Professional of the Committee, in their capacity as such; and (vi) any of the successors or assigns of any of the parties identified in the foregoing (i) through (v); *provided, however*, that nothing in this Section 10.5(a) shall be deemed to prohibit the Debtor, the Reorganized Debtor, the PPSI Liquidating Trust or the Liquidating Trustee from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against all of their respective employees,  directors or officers that is based upon an alleged breach of a confidentiality, noncompete or any other contractual obligation owed to the Debtor, the Reorganized Debtor, the PPSI Liquidating Trust or the Liquidating Trustee.**

(b)      **Releases by Holders of Claims and Interests**

(i)      **As of the Effective Date, to the fullest extent permissible by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim or Interest that affirmatively votes in favor of the Plan and does not execute an opt out shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever (other than for fraud, willful misconduct, criminal conduct and/or gross negligence) against (i) any of the directors and officers of the Debtor serving during the pendency of the Chapter 11 Case, (ii) any Professionals of the Debtor, (iii) the DIP Facility Lender, (iv) the members of the Committee, but only in their respective capacities on behalf of the Committee, (v) any Professionals of the Committee, in their capacity as such; and (vi) any of the successors or assigns of any of the parties identified in the foregoing (i) through (v) (the Persons identified in clauses (i) through (v) collectively, the "Claimholder Releasees") in connection with or related to the Debtor, the Chapter 11 Case, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided, however*, that nothing herein shall be deemed a waiver or release of a Claim or Interest holder's right to receive a distribution pursuant to the terms of the Plan or any obligation under the Plan or Confirmation Order. For the avoidance of doubt, this Release by holders of Claims and Interests is not and shall not be deemed a waiver of the Debtor's rights or claims against the holders of Claims and Interests, including to the Debtor's rights to assert setoffs, recoupments or counterclaims, or to object or assert defenses to any such Claim, and all such rights, Litigation Rights, causes of action and claims are expressly reserved, except as otherwise provided in the Plan.**

(ii)      **In accordance with the terms of the Transaction Retention Plan, all holders of Transaction Retention Plan Claims shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever (other than for fraud, willful misconduct, criminal conduct and/or gross negligence) against the Debtor, the PPSI Liquidating Trust and the Reorganized Debtor and anyone affiliated with any of the foregoing in consideration for a distribution on account of his/her Transaction Retention Plan Claim; provided, however, that any Claim scheduled as undisputed or Filed Claims that were filed before the Bar Date are not released pursuant to this Section 10.5(b)(ii). This Section 10.5(b)(ii) will be deemed to satisfy the requirement of the Transaction Retention Plan that the participants in the Transaction Retention Plan execute a release in order to receive benefits thereunder.**

**10.6      Discharge of the Debtor**

(a)      Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims, upon the Effective Date, (i) the Debtor shall be deemed discharged and released under Bankruptcy Code Section 1141(d)(1)(A) from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code Section 502, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Bankruptcy Code Section 501, (B) a Claim based upon such debt is Allowed under Bankruptcy Code Section 502, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan, and (ii) all Preferred Stock Interests and Common Stock Interests shall be terminated.

(b)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtor, the Committee, the Reorganized Debtor, the Post-Confirmation Committee, the PPSI Liquidating Trust, or the Liquidating Trustee any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all Phoenix Preferred Stock and Phoenix Common Stock, pursuant to Bankruptcy Code Sections 524 and 1141, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

**10.7     Exculpation and Limitation of Liability**

**(a)     To the fullest extent permitted by applicable law and approved in the Confirmation Order, none of the Debtor, the PPSI Liquidating Trust, the Liquidating Trustee, the Debtor's Professionals, the Committee's Professionals, the Post-Confirmation Committee, and any member of the Committee, solely acting in that capacity, the DIP Lender or any of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns), shall have or incur any liability to any holder of a Claim or an Interest, or any of their respective present or former directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute or are the result of fraud, criminal conduct, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.**

**(b)     Notwithstanding any other provision of the Plan other than Section 10.2, to the fullest extent permitted by applicable law and approved in the Confirmation Order, no holder of a Claim or an Interest, no other party in interest, and none of their respective present or former directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns, shall have any right of action against the Debtor, the PPSI Liquidating Trust, the Liquidating Trustee, the Debtor's Professionals, the Committee's Professionals, and any member of the Committee, solely acting in that capacity, the DIP Lender or any of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute or are the result of fraud, criminal conduct, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.**

**(c)     The Debtor, the PPSI Liquidating Trust, the Liquidating Trustee, the Debtor's Professionals, the Committee's Professionals, and any member of the Committee, solely acting in that capacity, or any of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns) shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**10.8    Injunction**

(a)    **Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged pursuant to Section 10.6 of the Plan or Bankruptcy Code Sections 524 and 1141 or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, the Committee, the Post-Confirmation Committee, the PPSI Liquidating Trust, the Liquidating Trustee and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, the Reorganized Debtor, the PPSI Liquidating Trust or the Liquidating Trustee; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

(b)    **Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, or an Interest or other right of an equity security holder, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to Sections 10.5, 10.6, or 10.7 of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated Interests or rights, including against the Claimholder Releasees: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

(c)    **Without limiting the effect of the foregoing provisions of this Section 10.8 upon any Person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim or an Allowed Interest receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 10.8 unless such Claim or Interest holder makes the appropriate opt-out election on its ballot.**

**10.9    Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code Sections 105 or 362 or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**10.10    Survival of the Final DIP Order**

The terms and conditions of the Final DIP Order and protections afforded to the DIP Facility Lender in the Final DIP Order shall continue and survive beyond the Effective Date of the Plan.

**10.11    Survival of the Sale Order and Sale-Related Documents**

(a)    Notwithstanding any provision to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, or the Confirmation Order, the Sale Order shall survive the entry of the Confirmation Order.  To the extent that any provision contained in the Disclosure Statement, the Plan, the Plan Supplement, or the

Confirmation Order shall conflict with or derogate from the terms of the Sale Order, the terms of the Sale Order shall govern.

(b)       All payment or reimbursement obligations of the Debtor owed to the Purchaser pursuant to the Asset Purchase Agreement or the Transaction Documents (as defined in the Sale Order and including, without limitation, the MSA and Processor Agreement) shall be paid in the manner provided therein, without further notice to or order of this Court.  All such obligations shall constitute allowed administrative claims against the Debtor with first priority administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Until satisfied in full in cash, all such obligations shall continue to have the protections provided in the Sale Order, and shall not be discharged, modified or otherwise affected by the Disclosure Statement, the Plan, the Plan Supplement, or the Confirmation Order.

(c)       In addition, as set forth in Section 6.3 of the Plan, the executory contracts and unexpired leases listed as Assumed Contracts in Plan Supplement are being assumed by the Reorganized Debtor.

## 10.12   Modifications and Amendments

In consultation with the Committee, the Debtor may alter, amend, or modify the Plan under Bankruptcy Code Section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Bankruptcy Code Section 1101(2), the Debtor may under Bankruptcy Code Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, *provided*, *however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## 10.13   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Section 1101 and 1127(b) of the Bankruptcy Code.

## 10.14   Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 10.15   Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan in accordance with this Section 10.13, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or

any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**10.16    Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor, the Reorganized Debtor or the PPSI Liquidating Trust under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

**For the Debtor:**

Phoenix Payment Systems, Inc.
1201 N. Market Street
Wilmington, Delaware 19801
Attn: Michael E. Jacoby
E-mail:mjacoby@phoenixmanagement.com

with copies to:

RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
Attn:  Mark D. Collins, Esq. and Russell C. Silberglied, Esq.
Telephone:  302-651-7700
Facsimile:  302-651-7701
E-mail:  collins@rlf.com
            silberglied@rlf.com

**For the Committee:**

LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, NJ 07068
Attn: Kenneth A. Rosen, Esq., Sharon L. Levine, Esq. and Wojciech F. Jung, Esq.
Telephone: 973-597-2500
E-mail:  krosen@lowenstein.com
            slevine@lowenstein.com
            wjung@lowenstein.com

-and -

WHITE AND WILLIAMS LLP
824 North Market Street, Suite 902
Wilmington, DE 19899 -0709
Attn: Marc S. Casarino, Esq.
Telephone: 302-654-0424
E-mail:  casarinom@whiteandwilliams.com

**10.17    Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to the

foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

**[SIGNATURE PAGE FOLLOWS]**

Dated: January 30, 2015

**PHOENIX PAYMENT SYSTEMS, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**as Proponents of the Plan**


By:    _/s/ Michael E. Jacoby_____
          Michael E. Jacoby
          Chief Restructuring Officer of Phoenix Payments Systems, Inc.


By:    _/s/ Wojciech F. Jung_____
          Lowenstein Sandler LLP, as counsel to the Committee


RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins, Esq.
Russell C. Silberglied, Esq.
Zachary I. Shapiro, Esq.
Marisa A. Terranova, Esq.
920 North King Street
Wilmington, DE 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701

*Counsel for Debtor and Debtor in Possession*


LOWENSTEIN SANDLER LLP
Kenneth A. Rosen
Sharon L. Levine
Wojciech F. Jung
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500

-and -

WHITE AND WILLIAMS LLP
Marc S. Casarino
824 North Market Street, Suite 902
Wilmington, DE 19899 -0709
(302) 654-0424

*Counsel for the Official Committee of Unsecured Creditors*

RLF1 10931266v.12